Statement of Facts.

## NORTH MANHEIM TP. v. CLARA ARNOLD.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL
COUNTY.

Argued February 16, 1888—Decided March 26, 1888.

1. When objects, ordinarily calculated to frighten roadworthy horses, are placed and suffered to remain upon the public highway, they are regarded as obstructions, and, after due notice to the public authorities, a township is liable for injuries caused thereby.

2. It matters not that the obstruction is outside the traveled route, as it is the duty of road officers to prevent the use of the roadside as a place of deposit for private property, particularly if it be of a character to frighten ordinary horses, though the duty does not attach until they know, or ought to know, of the obstruction.

3. The law does not impose upon township officers an absolute liability for every insufficiency of a road; they are required to do what is practicable and to preserve a condition of reasonable safety with reference to the kind and amount of travel accommodated.

4. But a township is not relieved by the fact that the party injured might sustain an action against the persons who put the obstruction in the place it was; it is the plaintiff's right to proceed against the township or the individual, as he may choose.

5. Injuries were received from the frightening of a horse at piles of lumber at the roadside and projecting into the highway; it was proper, as affecting the question of notice, to admit evidence showing that in repeated instances lumber was piled at that place, for, if so, it was the duty of the township to know the fact and to interfere.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 143 January Term 1887, Sup. Ct.; court below, No. 162 May Term 1885, C. P.

On March 26, 1885, Charles Arnold and Clara Arnold, in right of said Clara Arnold, brought case against the township of North Manheim, to recover damages for the loss of a horse, broken sleigh and harness.

At the trial on May 27, 1886, the material facts shown were : In March 1885, Mrs. Arnold and her sons, Nathaniel and Jonathan, on their way by the public highway to Orwigsburg,

in a sleigh, crossed the Philadelphia & Reading railroad at Landingville, when they observed a truck car standing on the track loaded with lumber. On their return, at 8 or 9 o'clock at night, Mrs. Arnold walked ahead across the railroad track on account of the difficulty of drawing the sleigh over. The lumber had been unloaded. Upon both sides of the road, piles of lumber were lying so that there was a passage-way of but about 14 feet 4 inches in a road laid out 33 feet wide. She heard a clatter and looking back saw that the horse had frightened at the lumber piles, was running away down the track, ran into the iron bridge, and was killed.

Henry Drumheller, called for plaintiff, testified inter alia, that lumber had been lying at the road for several days, a good lot of lumber for a long time on the west side:

Plaintiff's counsel: I now propose to ask the witness, was there or was there not, almost continually, for many years, piles of lumber on both sides, in the road and on the margin of the road, in close proximity to the railroad crossing; for the purpose of showing negligence on the part of the township officials.

The defendant objects that it is immaterial to this issue what lumber was on either side of this road at other times than the one complained of when this horse shied; defendant does not object to the plaintiff showing anything as to the lumber that was there at the time, and the length of time it was there; but to all other lumber the defendant does object.

By the court: We think you may show that they were in the habit of unloading lumber at this place, or you can show the knowledge of the supervisors, that they permitted lumber to remain in the road, as bearing upon their knowledge of the fact that the lumber was there; but you can't recover for any negligence, except the permitting of that particular obstruction that caused your injury. You can't recover for piles of lumber there five years ago and that caused no harm to you. You may show any knowledge on the part of the township officers.[7]

A. It was the custom of the people in the neighborhood to unload their lumber, boards and shingles in and upon the margin of the public road for a long time before the horse was killed and afterwards; it was lying there, as I told you, before, to-day, I can't say how long before; a good time before;

whenever there was a lot of lumber there it was generally in the road; it may have been there a couple of years, may be; pretty much all the time there was a botheration there. . . . .

On the part of the defendant there was evidence from which it was claimed that Nathaniel drove between the piles of lumber negligently, in that he held the lines with one hand, the other hand being in his pocket.

The court, BECHTEL, J., having reviewed the testimony charged the jury as follows :

We will endeavor now to state to you what is the duty of the township and what is the duty of the parties; then you must take all the testimony in the case and endeavor to ascertain what your verdict should be.

It is the duty of the township officials to keep the public roads or highways in safe condition for the traveling public. They have given to them full power to keep the roads in such condition as will make them reasonably safe for the public to travel upon. A municipal corporation is bound to keep the streets, roads and bridges over which it has jurisdiction in repair, and for a failure to perform that duty the district must answer in damages for any injury occasioned exclusively by the negligence of the officers. We mean, by "exclusively," injuries to which the plaintiff has not contributed by his own negligence. A road or street may be put out of repair by the deposit of obstructions thereon which impede and hinder travel or make it dangerous; or by partial destruction of the roadbed itself, producing the like effect. To repair means to replace, to restore, to put in sound or good condition after injury or partial destruction. Therefore, to repair a road or street, to restore it to its former condition and give it the essential properties of a suitable highway, requires the removal of all obstructions cast upon it, which impede its free passage. . . . .

In determining whether or not the defendant has been negligent, you may, among other things, consider the locality of the road, the extent of travel upon it. If it be one on which there is but little travel and not thickly built upon, no such prompt duty to discover the obstruction would be imposed upon the public officials, as if it were one in the heart of a

city.  Dense population and continuous travel on a street, call for more care and watchfulness on the part of the authorities than over streets not thus populated and used.  We direct your attention to these matters as being important to the street placed where it is; the amount of travel over it; the railroad crossing, the place where lumber is unloaded; whether, under the circumstances the obstruction complained of in this case was permitted to remain, if you find it was an obstruction, for such a length of time as made it unreasonable, and therefore made the township guilty or liable for negligence in its officials, in not discovering that obstruction and removing it.  And, to ascertain that, you are to consider all the circumstances, together with the testimony; and as our Supreme Court have said, for that is what we have read to you, the circumstances of an obstruction in a street, in a thickly populated town, are different from those ·in a road in the country.  You are to take all the circumstances into consideration and ascertain whether or not the officials were guilty of negligence in not removing it.  Then if you find that they were, whether the plaintiff has been guilty of any negligence. We have already stated to you what his duty is.  Now, in ascertaining that, you must consider that he was approaching a railroad crossing of four tracks at grade, according to his testimony, between eight and nine o'clock at night.  Did he conduct himself in such manner, under these circumstances, as to exercise ordinary care and caution in driving along the public highway?  If he did not, if his conduct was not such as showed that he exercised ordinary care and caution in driving along the public highway, under all the circumstances in this case, then he was negligent, and if that neligence contributed, in any degree, to the injuries that were done to the property, then the plaintiff who employed him or put him in that position cannot recover anything from this township, for the reason, as we have heretofore stated to you, that neither you nor the court can separate the injury that he, by his negligence, did, from the injury that the township did by its negligence, and, therefore, the law says there can be no recovery at all under such circumstances. . . . . .

On the part of the plaintiff we are requested to instruct you as follows :

Charge of Court below.

1. If the jury believe that that part of the public road at and near the railroad crossing, where the accident occurred, was dangerous to travel by reason of piles of lumber on said public road, and on the margin on each side of the road, so as to leave but 14 feet 4 inches in width for travel, between the piles of lumber, and that such piles of lumber so located were calculated to frighten plaintiff's horse, and did frighten plaintiff's horse, the township is liable in damages for the horse, sleigh and harness.

Answer: To this we say: We have heretofore stated to you the duty and the liability of the township, and now say, if you find the facts to be as they are here stated, and further find such obstruction continued for such a length of time as to make the delay to remove it negligence in the officials, then this point is affirmed. Of course, you must also find that the plaintiff did not contribute to that injury by his own negligence.[1]

2. That it is the duty of the township authorities to keep the road so free from obstruction that even a skittish horse may be employed without danger.

Answer: We affirm this.

3. If the pile of lumber on and upon the margin of the public road, leaving only 14 feet 4 inches between the piles of lumber for travel, was permitted to remain for a long time at a point in the bend of the road, and at and near the railroad crossing, and these circumstances were such as would render the accident not only possible but probable, it was the duty of the supervisor to provide against such a probability, and the want of such provision is negligence per se.

Answer: To this we say: Affirmed. But we say to you that the plaintiff cannot recover for such negligence, unless you find that such negligence was the exclusive cause of the damage to her property.[2]

The defendant requests us to instruct you as follows:

1. The plaintiff was bound to use ordinary care and caution, and if the driver could, by such care, have avoided the accident, the plaintiff cannot recover. The least contributory negligence will prevent recovery.

Answer: We affirm this.

2. If the jury believe the evidence of Amos Brown and

Irvin Deibert, and are satisfied from that evidence that the driver of the plaintiff had one hand in his pocket and the other on the lines, and that that was careless driving over the railroad crossing, then the driver would be guilty of contributory negligence, and the plaintiff cannot recover.

Answer: If you find the facts to be as here stated, and that such negligence contributed to the injuries of the plaintiff's property, then we affirm this point.[3]

3. That even if there was lumber on the public highway at the time of the accident, placed there by the railroad authorities or by parties other than the township, on their siding, which may have projected a few feet upon the width of 33 feet, claimed for the road at that point, that unless it appears that the township officials had notice of this lumber being there, the township would not be liable.

Answer: To this we say: This is affirmed, unless you find under all the evidence and circumstances of this case that the obstruction complained of remained there for such unreasonable length of time as to make the failure of the officials to remove it negligence upon their part.

4. The township is not bound to keep the said public road to the full width of 33 feet in traveling condition, but only bound to maintain and keep in order the traveled portion of the road; that if the evidence in this case shows that fact, it precludes the right of recovery in this case by the plaintiff.

Answer: To this we say: If you find that the road in question is a country road, and that a sufficient portion of the middle of the road was kept in smooth condition and safe and convenient for travel, it is sufficient.

5. That under the evidence in this case there was no evidence of notice to the township, either actual or constructive, of the lumber extending into the traveled portion of the public highway, and therefore the verdict must be for the defendant.

Answer: We know of no evidence in this case showing that the supervisor was actually notified that the lumber complained of was in the traveled or public highway, but we submit to you the question whether or not there was an obstruction in the public highway, and if so, whether it continued there

such length of time as to make a failure of the officials to discover and remove it, negligence on their part.[4]

6. That a person traveling a road on a dark night is bound to use more than ordinary care, and a want of it will prevent him from recovery in an action for damages.

Answer: It is the duty of the driver to use due care and proper caution in driving along the public highway, and what is due care and due caution depends upon the circumstances, place, etc., such as that he was at a railroad crossing where he was required to pass over four tracks at grade, and this at about the hour of 9 o'clock at night.[5]

7. That under all the evidence in the case, the verdict should be for the defendant.

Answer: Refused.[6]

The verdict of the jury was in favor of the plaintiff for $225. Judgment being entered, the defendant took this writ, assigning for error:

1, 2. The answers to the plaintiff's points.[1][2]

3–6. The answers to the defendant's points.[3 to 6]

7. The admission of plaintiff's offer.[7]

*Mr. G. H. Gerber* and *Mr. W. F. Shepherd*, for the plaintiff in error.

1. It was error to admit the testimony objected to. Would the knowledge possessed, not by the supervisors of the township when the accident occurred, but by the supervisors years before, that lumber was piled up on both sides of the road, have anything to do with the obstruction, if any, at the time of the accident? Evidence which, if given, would have no legal operation on the rights of the parties should be rejected: Kocher v. Bowman, 10 W. 129; Parker v. Donaldson, 6 W. & S. 133; Stewart v. Bank, 11 S. & R. 267.

2. To hold the township liable, there must be either actual or constructive notice of an obstruction. It was conceded there was no actual notice. Constructive notice is evidence of such facts, the presumption of notice from which is so strong that the courts will not allow of it being contradicted: Garrard v. Railroad Co., 29 Pa. 154; Billington v. Welsh, 5 Binn. 134; Story's Eq. J., § 399. Unless the defect be so

open and notorious as to be evident to all passers by, the township is not liable until knowledge of the defect complained of is brought to the attention of the supervisors. Even if open and notorious, a reasonable time must elapse before the rule as to constructive notice will apply: Otto Tp. v. Wolf, 106 Pa. 608. The rule in the case of a township is different from that in case of a city: Fritsch v. Allegheny City, 91 Pa. 226.

3. Seeing the danger, the plaintiff allowed the driver to test it. She was in duty bound to warn against the attempt, and, being guilty of negligence herself, cannot recover: Penn. R. Co. v. Beale, 73 Pa. 505; P. & C. R. Co. v. McClurg, 56 Pa. 294; Catawissa R. Co. v. Armstrong, 52 Pa. 282; Hanover R. Co. v. Coyle, 55 Pa. 396; Erie City v. MaGill, 101 Pa. 616; Pitts. S. R. Co. v. Taylor, 104 Pa. 306; Penn. R. Co. v. Ogier, 35 Pa. 61; McKee v. Bidwell, 74 Pa. 218; Baker v. Fehr, 97 Pa. 70.

4. The law does not require that ways should be kept in a condition of such absolute safety as precludes the possibility of accident or injury: Thompson, Neg., 761; Raymond v. Lowell, 6 Cush. 524. Country roads are seldom, if ever, kept in repair from side to side. A sufficient portion of the middle only is kept in smooth condition; the rest is often left dangerous by reason of ditches and obstructions of various kinds: Monongahela City v. Fischer, 111 Pa. 9; Scranton v. Hill, 102 Pa. 378.

Mr. J. W. Roseberry, for the defendant in error:

A township is bound to remove objects deposited upon highways, the natural effect of which is to occasion accidents by frightening horses of ordinary quietness: Shear & Redf., Neg., 466, 467; Orcutt v. Bridge Co., 53 Me. 500; that even skittish horses may be employed without danger: Pittston Bor. v. Hart, 89 Pa. 389. It is against the probabilities of accidents municipalities are bound to provide, and the want of such provision is negligence of itself: Hey v. Philadelphia, 81 Pa. 50; Fritsch v. Allegheny City, 91 Pa. 226; Born v. Plank Road Co., 101 Pa. 334; Burrell Tp. v. Uncapher, 117 Pa. 353.

OPINION, MR. JUSTICE CLARK:

This suit was brought by Clara Arnold to recover damages for the loss of a horse, sleigh and harness, through the alleged

negligence of the road supervisors of North Manheim township. The injury occurred at Landingville, in the month of March, 1885, at a point where the public road to Orwigsburg crossed the four tracks of the Philadelphia and Reading Railroad. It appears that a quantity of lumber taken from the cars had been deposited in piles on each side of the public road. The piles were five or six feet high, and they so projected into the road, which was thirty-three feet wide, that the space left open for travel was about fourteen feet and six inches. Late in the evening of the day of the occurrence, the plaintiff's son undertook to drive this horse and sleigh over the railroad crossing, on the public road, returning from Orwigsburg, when the horse, it is alleged, took sudden fright at the lumber piles, turned on to the railroad track, upset the sleigh, ran into the railroad bridge, and was killed; and that the sleigh and harness were wholly destroyed. It is contended on part of the plaintiff, that these lumber piles were improperly permitted to remain on the public road; that they caused the fright of the horse, which resulted in the injury, and that the township is liable therefor.

It is well settled by the decisions of this court, and of the courts of other states, that where objects, ordinarily calculated to frighten roadworthy horses, are placed and suffered to remain in the public highway, they are regarded as defects in the road, and the public authorities after due notice are liable for injuries caused thereby: Whar. on Neg., 983; Ayer v. Norwich, 39 Conn. 376; Morse v. Richmond, 41 Vt. 435; Stone v. Hubbardston, 100 Mass. 50; Foshay v. Glenn Haven, 25 Wis. 288; Bartlett v. Hooksett, 48 N. H. 18; Card v. City of Ellsworth, 65 Me. 547. To the same effect, although not brought against the township officers, is our own very recent case of Piollet v. Simmers, 106 Pa. 95, where the authorities are collected and the whole subject is very fully considered. The rule is perhaps difficult of practical application, as the frightening of a horse cannot be said to be governed by any rule of reason or experience. The fright of a horse may, perhaps, as often be attributable to the place in which an object is unexpectedly found, as to the frightful appearance of the object itself; still, there are objects which are well known to present such an appearance, as may be expected to, and naturally will,

alarm ordinarily well broken and roadworthy horses, and it is the duty of supervisors of highways to remove all such impediments to safe travel.

It makes no difference that the lumber was not in the traveled route; the fact that it was piled upon the margin instead of the path of the highway, does not alter the rule of liability, for the result produced, in either event, is that the traveled route is thereby rendered unsafe. It is the duty of road officers to forbid and prevent the use of the roadside as a place of deposit for private property, particularly if it be of a character to alarm or frighten ordinary horses. "The traveler has reason to expect that the highway will have the ordinary and reasonable incumbrances, which arise from the nature of the soil and country, and its being worked and repaired in a proper manner; but he has no reason to apprehend that the township has suffered these dangers to be increased, by allowing the land taken for public use to become unlawfully appropriated to private uses, as a place of deposit for property, which will in any manner obstruct or impede travel, whether by frightening his horse or clogging his wheels:" Morse v. Richmond, 41 Vt. 435. This is said, of course, with the qualification that the duty does not attach until the township officers know, or ought to know, of the obstruction. It was certainly proper, as affecting the question of notice, for the plaintiff to introduce evidence to show that lumber had on often repeated cases been piled on this place upon the highway; for, if this were so, the township officers, if they did not know, should have known the fact, and it was their duty to interfere to prevent this habitual and continued invasion of the highway.

The law does not impose upon the township officers an absolute liability for every insufficiency of a road; they are required to do what is practicable to be done and to preserve a condition of reasonable safety, with reference to the amount and kind of travel which the highway accommodates. The right of the public to the free and unobstructed use of a highway is subject, of course, to reasonable and necessary limitations. The convenient delivery of lumber, stone, etc., for building purposes, and of fuel, merchandise, etc., often necessitates the temporary occupation of a street. This, to a reason-

able extent, is not an invasion of the public right; it is a legitimate use of the highway. An owner of land abutting on the public highway has a right to use a portion of the highway in a reasonable manner, for special purposes, for a temporary period; that right is not subservient to the right of the traveling public, and its exercise, without negligence, imposes no liability. The owners of this lumber might perhaps have been privileged to use the street for the temporary purpose of loading or unloading their lumber; this would, perhaps, depend upon circumstances, but it is plain that they had no right to use the highway for the purpose of a board-yard.

Nor does it alter the case, that the party injured may sustain an action against the persons who place a nuisance in the highway; it is the right of the party to proceed against the township, or the individual, as he may choose. No question has been made as to the roadworthy character of the horse; we will not assume, in the absence of proof, that he was a vicious animal, or that he was not roadworthy, and well broken.

Upon a full consideration of the whole case

　　　　　　　　　　　　　　　　The judgment is affirmed.

