Michael Janosko et al., Appellants *v.* Pittsburgh National Corporation et al., Appellees.

Argued May 2, 1984, before Judges WILLIAMS, JR., BARRY and PALLADINO, sitting as a panel of three.

*Paul Bogdon*, with him, *Edward G. Shoemaker* and *Joan Shoemaker, Adams, Shoemaker & McSorley,* for appellants.

*David R. Johnson, Thomson, Rhodes & Cowie,* for appellees.

OPINION BY JUDGE BARRY, July 13, 1984:

This appeal results from an order of the Court of Common Pleas of Allegheny County which granted a motion for summary judgment filed by the defendant-appellee, the Borough of Brentwood (Borough), and accordingly dismissed the cause of action against the Borough filed by appellants, Michael Janosko and Elizabeth Ann Janosko, his wife.

On March 17, 1978, Mr. Janosko was severely injured in an automobile accident when an auto driven by Ms. Barbara Ann McHugh slid on a patch of ice on Route 51 in the Borough, crossed the center line and struck the Janosko automobile. The ice patch was a recurring problem caused by water runoff from private property abutting Route 51, a state highway.

Prior to filing this lawsuit, appellants reached a settlement with Ms. McHugh. Appellants then filed an action in trespass, naming as defendants the Borough and various parties having some relationship with Roman Gardens, Inc., a restaurant from which some of the water runoff originated. Joined as additional defendants were the Commonwealth, Department of Transportation (DOT), Allegheny County

and various other parties who were alleged to have been additional sources of the water runoff. Before the Borough filed the present motion for summary judgment, the appellants reached a settlement with all of those parties associated in some manner with Roman Gardens, Inc. The trial court granted the Borough's motion for summary judgment, holding that the Borough had no duty to either warn of hazardous conditions on a state highway or to take remedial action with respect to those dangers. This appeal followed.

Appellants first claim that the trial court erred in holding the Borough had no duty with regard to hazards on a state highway. In *Medina v. Township of Falls*, 71 Pa. Commonwealth Ct. 295, 454 A.2d 674 (1983), an individual was injured when her car struck a pothole on a state highway running through Falls Township. Prior to the accident in question, another individual hit the *same* pothole and notified the local police. Despite this, we affirmed an order of the trial court granting the Township's motion for summary judgment, ''because the Commonwealth has exclusive responsibility for the repair and maintenance of state roads. . . .'' *Id.* at 297, 454 A.2d at 675. Appellants do not challenge our holding in *Medina* and admit that under most circumstances, the Borough had no duty to either remove or correct a dangerous condition on a state highway. Rather, appellants argue "that the long term and continuing drainage from the adjoining property constituted a known and serious public nuisance within the jurisdiction and boundaries of the Borough, which the Borough was obligated to abate.'' (Appellants' Brief, Page 16). The trial court rejected the argument, relying on *Stevens v. Reading Street Railway Co.*, 384 Pa. 390, 121 A.2d 128 (1956), where the plaintiff stepped into a hole in a state highway running through the City of Reading when alighting

from a bus. As the hole had existed for over six weeks, the plaintiffs argued there, as do appellants in this case, that the municipality was required to abate the nuisance by either repairing the hole or notifying the Commonwealth of its existence. As the Court stated, "It is a sufficient answer that our cases hold that no liability can be imposed on the City unless there is legislation compelling repair and maintenance." *Id.* at 403, 121 A.2d at 135.

Appellants argue, however, that *Stevens* is inapposite because there was no allegation that the hole emanated from any known problem on private property abutting the state highway. In support of their position, appellants cite *McCarthy v. Ference*, 358 Pa. 485, 58 A.2d 49 (1948) and *Reedy v. Pittsburgh*, 363 Pa. 365, 69 A.2d 93 (1949). For the following reasons, we believe neither of these cases is controlling in the present dispute.

In *McCarthy,* a new road was built through the joint efforts of private industrial landowners and the local municipality. Once built, the road was dedicated to and accepted by the local municipality. Eventually, the road was adopted as a state highway, with the Commonwealth assuming the responsibility for maintaining the road from curb to curb with the local municipality continuing to maintain the sidewalks and the gutters. Because of the cuts made into the hillside to build the road, weather conditions caused portions of the hillside to fall on the road sporadically; one of these rockslides occurred, causing serious injury to the plaintiff, who sued the private landowners and recovered damages.

On appeal, those private landowners argued they were absolved from responsibility because the road had been dedicated to the local municipality and subsequently turned over to the Commonwealth. The Court rejected these arguments, stating:

The duty of a municipality *or* of the Commonwealth itself to provide for the safety of the travelers on a public road is something wholly distinct from the duty of the adjacent landowners not to impair such safety by negligence in the maintenance of their own lands beyond the highway limits where such lands had been artificially changed from their natural state. The liability of the Commonwealth *or* municipality and the liability of the abutting owners under such circumstances are not mutually exclusive but dual and co-existent. (Emphasis added.)

*McCarthy* at 498, 58 A.2d at 56.

In *Reedy,* a plaintiff was injured when she slipped and fell on a snow-covered sidewalk. Evidence was presented which showed that, for over four years, the spot of the fall was always icy in freezing weather because of water on the sidewalk coming from the downspout of a house adjoining the sidewalk. On appeal from an adverse verdict, the City of Pittsburgh argued that the landowner, and not the City, was liable. As the Court responded:

While the primary obligation is on the property owner the city has a secondary obligation: Beebe et al. v. City of Philadelphia, 1933, 312 Pa. 214, 216, 167 A. 570. It therefore became the duty of the city to cause the nuisance to be abated or, failing that, to respond in damages for neglect to see that the sidewalk was reasonably safe for the purpose for which it was intended.

*Reedy* at 367, 69 A.2d at 94. Appellants argue that the principles of these cases, when considered in concert, require a reversal of the trial court's order granting summary judgment in the present case, as they believe the Borough had a duty to abate this nuisance. We disagree.

While it is true that the Court in *McCarthy* stated that either the Commonwealth or the municipality had a coexistent duty with the adjoining landowner, a close reading of that case reveals the municipality's duty does not arise because the source of the nuisance was private property within the municipality; rather, that duty is placed on the Commonwealth *or* the municipality because it had the duty of maintenance of the thoroughfare itself which was made dangerous by the nuisance. Presently, the Commonwealth alone is charged with responsibility for maintaining Route 51, not the Borough.

In *Reedy,* the City of Pittsburgh was found liable for failure to abate a nuisance on a sidewalk. In discussing possible liability for injuries sustained on a sidewalk, the Court in *Beebe v. Philadelphia,* 312 Pa. 214, 216, 167 A. 570, 571 (1933), stated:

> The responsibility for snow removal is in the first instance on the occupiers or owners of property. The duty of the municipality is secondary and supplemental: McLaughlin v. Kelly, 230 Pa. 251. The rules governing the liability of a municipality for the condition of its streets and pavements have been well defined by many decisions. One of the best summaries is found in Bailey v. Oil City, 305 Pa. 325. The court said at page 327: "A municipality is, in general, not liable for accidents resulting from the icy condition of its streets and walks. . . . This is so because of the practicable impossibility of keeping cartways and sidewalks free from ice in this climate during the winter season. . . . It is, however, a city's duty to cause the removal from the walks of such substantial ridges or hills of ice or snow as constitute an obstruction to travel. . . . It must appear either that the city had actual notice of the obstruc-

tion or that it had existed so long as to amount to constructive notice.'' See also Green v. Hollidaysburg, 236 Pa. 430.

Suffice it to say that the concept of ''secondary liability'' is not applicable to state highways, and *Reedy,* therefore, does not support appellants' position. Despite the fact that this problem on Route 51 emanated from private property in the Borough, we cannot depart from our established line of cases which hold that a local municipality has no duty to repair or maintain a state highway running through the municipality.

Appellants also argue that the Borough may be liable under Section 323 of the Restatement of Torts (Second), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if: (a) his failure to exercise such care increases the risk of such harm, *or* (b) the harm is suffered because of the other's reliance upon the undertaking.

According to appellants, even though the Borough had no duty with regard to Route 51, its police force had a policy of informing DOT whenever ice formed on this part of the road; on the date of the accident, the Borough, which should have been aware of the icy patch, never so informed DOT, thereby, according to appellants' argument, increasing the risk of harm to Mr. Janosko.

In *Morgan v. Sbarbaro,* 307 Pa. Superior Ct. 308, 311, 453 A.2d 598, 599 (1982) the Court stated:

> The doctrine of waiver has become firmly entrenched in Pennsylvania law and it is clear

that on appeal a new and different theory of relief may not be successfully advanced for the first time. The language of Justice ROBERTS in Kimmel v. Somerset County Commissioners, 460 Pa. 381, 333 A.2d 777, 779 (1975) is applicable:

> Appellants are requesting this Court to review the decree on entirely different theories than they presented to the trial court. We will not do so. It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court.

In this case, appellants proceeded before the trial court on traditional concepts of negligence, *i.e.*, duty and breach of that duty. Now, appellants are arguing a different legal theory. *Morgan* and *Kimmel* hold we cannot now consider such an argument.

### ORDER

AND Now, July 13, 1984, the order of the Court of Common Pleas of Allegheny County, entered March 16, 1983, at No. GD79-6778 is affirmed.